**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **OTIS HILL, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:22-cv-265 (MTT)** |
| ) | |
| **Deputy Warden ERIC MARTIN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## ORDER

Defendants Deputy Warden Eric Martin, Warden Tarmarshe Smith, Unit Manager Knight, and Sergeant Williams move for summary judgment on plaintiff Otis Hill's 42 U.S.C. § 1983 claims under the Eighth Amendment for failure to protect and inhumane conditions of confinement. Docs. 1 ¶¶ 82-107; 68. For the following reasons, the defendants' motion (Doc. 68) is **GRANTED**.

## I. BACKGROUND[1]

Hill was housed by the Georgia Department of Corrections ("GDC") at Baldwin State Prison ("BSP") from March 28, 2017 to March 17, 2022 and at Macon State Prison ("MSP") from March 17, 2022 to May 9, 2023. Docs. 68-1 ¶¶ 1-3; 69-1 ¶¶ 1-3. The

---

[1] Unless otherwise stated, these facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Court notes that Hill's attorney, after accepting a generous fee, attempted to withdraw from representing Hill. Docs. 46; 53; *see also Bryant v. Calvary Christian Sch. of Columbus, Ga., Inc.*, No. 4:21-cv-205-CDL, at Doc. 67 (M.D. Ga. Sept. 5, 2023) (moving to withdraw after adverse judgment was entered); *Vass v. Martin*, No. 5:21-cv-373-MTT, at Docs. 64; 64-1 (M.D. Ga. Apr. 5, 2023) (moving to withdraw because "the value of [the plaintiff's] case … decreased significantly"); *Phillips v. Valdosta, Ga.*, No. 7:21-cv-63-HL, at Doc. 9 (M.D. Ga. Jan. 26, 2022) (moving to withdraw because plaintiff was "uncooperative"). The Court denied the motion. Doc. 51 at 2. It appears Hill's attorney put little effort in the case thereafter.

alleged events giving rise to this action occurred at MSP.  Doc. 1 ¶ 1, at 2.  BSP is

relevant because Hill's failure to protect claims are based on alleged retaliation against

Hill for filing a now-dismissed lawsuit against Martin and others for incidents that

occurred at BSP ("the BSP lawsuit").  *Id*. ¶ 83, at 23; *Hill v. Berry*, No. 5:21-cv-379-MTT-

CHW (M.D. Ga. Oct. 28, 2021).[2]  During the relevant time, Martin was the BSP Deputy

Warden of Security; Smith was the MSP Warden; Knight was the MSP Tier I and Tier II

Unit Manager; and Williams was an MSP Corrections Emergency Response Team

("CERT") Sergeant.  Docs. 68-1 ¶¶ 4, 8, 11, 14; 69-1 ¶¶ 4, 8, 11, 14.

The following facts, unless otherwise noted, are Hill's version of events according

to his complaint and deposition.  As will be discussed, Hill's testimony often undercuts

the allegations of his complaint, and Hill's nine-page brief gives scant attention to either.

In a nutshell, Hill contends every action by the defendants was part of an effort to

intimidate and retaliate against him because of the BSP lawsuit.  Docs. 68-1 ¶¶ 25-26;

69-1 ¶¶ 25-26.

**A. Factual Background**

On October 28, 2021, Hill filed the BSP lawsuit against Martin and others,

alleging various constitutional violations.  Doc. 68-1 ¶ 22; *Hill v. Berry*, No. 5:21-cv-379-

MTT-CHW, at Doc. 1 (M.D. Ga. Oct. 28, 2021).  When Hill arrived at "MSP, he received

a note from an unknown inmate stating that Defendant Martin had a hit on his head."

Docs. 68-1 ¶ 37; 69-1 ¶ 37.  Also after his arrival, "Knight and Williams threatened to put

him in a cell with" violent inmates "if [he] did not generally comply."  Docs. 68-1 ¶ 29; 69-

1 ¶ 29.  Hill alleges that, "[u]pon the direction from Warden Smith, Sergeant Williams

---

[2] The BSP lawsuit was dismissed on March 3, 2023 because Hill failed to exhaust his administrative remedies.  *Hill v. Berry*, No. 5:21-cv-379-MTT-CHW, at Docs. 48; 51 (M.D. Ga. Mar. 3, 2023).

took Mr. Hill from solitary confinement and directed incarcerated individuals and correctional officers to physically hit Mr. Hill all over his face and body until he was incapacitated and unable to breathe."  Doc. 1 ¶ 60.

On an unknown date, Knight "call[ed] [Hill] a rat for suing officers and told him he needed to stop."  Docs. 68-1 ¶ 31; 69-1 ¶ 31.  On another unknown date, "Knight served [Hill] a closed Popeyes chicken box [with] glass on the chicken."  Docs. 68-1 ¶ 45; 69-1 ¶ 45.  Knight also brought Hill a food tray that contained rat feces, but Hill does not know who put the rat feces on the tray.  Docs. 68-1 ¶ 68; 69-1 ¶ 68.  On September 15, 2022, *after* this action was filed, Knight "threw" a Noxzema can at Hill; Hill's cellmate had placed the can in their food tray flap and because Hill "was sitting in the flap to get air," the can hit Hill "in the side of the face and chest."  Docs. 18-4 at 2; 68-1 ¶ 35; 68-3 at 56:7-23; 69-1 ¶ 35.

The parties agree that on or around April 7, 2022, Hill "was having breathing issues," so his cellmate started a fire to get officers' attention.  Docs. 11-5 at 54; 68-1 ¶ 49; 68-3 at 77:17-19, 78:18-20; 68-6 ¶ 21; 68-7 ¶ 15; 69-1 ¶ 49.  Officers put out the fire with a fire extinguisher and, in the process, Hill "contends that he was sprayed in the face."  Docs. 68-1 ¶ 51; 68-3 at 87:2-10; 68-5 ¶ 13; 68-6 ¶ 21; 68-7 ¶ 15; 69-1 ¶ 51.  Hill "does not know who actually sprayed the extinguisher," but Smith, Knight, and Williams were present.   Docs. 68-1 ¶ 57; 68-6 ¶ 21; 69-1 ¶ 57.  Apparently because Hill had been sprayed, officers escorted Hill to medical.  Docs. 68-1 ¶ 52; 68-6 ¶ 21, 69-1 ¶ 52.  Hill contends that on the way to medical, Smith instructed another officer "to twist [Hill's] arm."  Docs. 68-1 ¶ 53; 68-3 at 52:3-7, 13-14; 69-1 ¶ 53.  On an unknown date, "Williams called [Hill] a rat for telling on officers and stated that he is going to get his."

Docs. 68-1 ¶ 32; 69-1 ¶ 32.  Neither Williams nor Smith physically assaulted Hill.  Docs. 68-1 ¶¶ 32, 36; 69-1 ¶¶ 32, 36.  At another unknown time, Hill received a breakfast tray with a rat on it.  Docs. 68-1 ¶ 66; 69-1 ¶ 66.

Finally, while housed at MSP, Hill contends he received spoiled food, he was provided no bedding, there was a rat infestation, he was denied showers, and the water was turned off.  Docs. 68-1 ¶¶ 59-61, 72; 69-1 ¶ 72.

## B. Procedural History

Hill filed suit against the defendants[3] on July 22, 2022, alleging two claims under 42 U.S.C. § 1983: (1) "Eighth Amendment violation failure to protect and abuse of force" based on the defendants' alleged retaliatory conduct, and (2) "Eighth Amendment violation conditions of confinement" based on MSP's "inhumane living conditions."  Doc. 1 ¶¶ 82-107.  The defendants now move for summary judgment on all Hill's claims.  Doc. 68.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th

---

[3] Hill's complaint does not clarify whether this action was brought against the defendants in their official or individual capacities.  The defendants moved for summary judgment on any claims brought against them in their official capacities and Hill failed to respond, abandoning any official capacity claims.  Doc. 68-2 at 2 n.2; *see generally* Doc. 69-3; *see Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014).  In any event, those claims are barred by the Eleventh Amendment.  *Cross v. State of Ala.*, 49 F.3d 1490, 1503 (11th Cir. 1995); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

Cir. 1991)); *Anderson*, 477 U.S. at 248.  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id*. at 1438 (quoting *Celotex*, 477 U.S. at 324) (alterations in original).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id*.

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc*., 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id*. (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), "the court may … consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).  However, "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge … [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

The defendants argue they are entitled to summary judgment because (1) Hill failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and (2) even if Hill had properly exhausted his administrative remedies, they are entitled to qualified immunity.  Doc. 68-2 at 8-20.  The Court agrees.

## A. Failure to Exhaust[4]

The PLRA requires an inmate, as a "precondition to an adjudication on the merits," "to exhaust all administrative remedies before filing his § 1983 suit."  *Rich*, 530 F.3d at 1374; *Whatley v. Smith*, 898 F.3d 1072, 1074 (11th Cir. 2018); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).  "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' … rules that are defined not by the PLRA, but by the prison grievance process itself."  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

### 1. The GDC's grievance procedure

The grievance procedure applicable here is found in GDC Standard Operating Procedure ("SOP") 227.02, which requires inmates to follow a two-step process to

---

[4] An exhaustion defense is properly raised in a motion to dismiss.  *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (explaining that "an exhaustion defense … is not ordinarily the proper subject for a summary judgment; instead; it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment") (citations omitted).

exhaust their grievances.  Doc. 11-5 at 16.  First, an inmate must file an "original grievance" within ten days of the grievable issue.  *Id*. at 16.  For good cause, inmates may file outside of the ten-day window.  *Id*.  The original grievance is then screened by prison staff, and typically either rejected or accepted for processing.  *Id*. at 17.  A response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a ten-day extension on written notice.  *Id*. at 19.  Upon expiration of the response period or upon an inmate's receipt of a response, an inmate must proceed to step two, which requires the inmate to file within seven days, a "central office appeal."  *Id*. at 22.  The GDC Commissioner then has 120 days to respond to the appeal.  *Id*. at 23.

### 2. The Turner *analysis*

To determine whether an inmate properly exhausted his claims, courts in the Eleventh Circuit follow the two-step process mandated by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008).  Under *Turner*'s first step, the court must look to the factual allegations in the defendant's motion and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true.  *Id*. at 1082.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id*.  If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact to resolve the disputed factual issues related to exhaustion.  *Id*.  At the second step, it is the defendant's burden to establish that the plaintiff failed to exhaust available administrative remedies.  *Id*.

Hill does not dispute that he failed to exhaust, but he argues his failure should be excused because the grievance process was unavailable to him. Docs. 1 ¶ 7 ("Mr. Hill has been unable to file appeals for his grievances related to conditions of confinement, physical abuse, and failure-to-protect …. For these reasons, Mr. Hill requests that this Court excuse any failure to exhaust his administrative remedies.); 68-3 at 193:2-15 (insinuating that this action was notice to the defendants); 69-3 at 4 ("Mr. Hill has been unable to file appeals for his grievances related to conditions of confinement, physical abuse, and failure-to-protect.").

The resolution of Hill's unavailability defense requires a detailed discussion of his grievance history. After filing the BSP lawsuit but before filing this action, Hill filed no grievances at BSP and three grievances at MSP. Doc. 31-6 at 2.

Hill submitted grievance 336828 on March 24, 2022:

> On and around 3/17/22, I Otis L. Hill Jr. was transferred to Macon State Prison. Macon State Prison is short of staff which places me in an unsafe and overcrowded condition. These violations are Deliberate and Continuous. Violations are harmful and proven by the U.S. Supreme Court to be fatal to my life. Witnesses are Macon State Prison Staff and Administration, Cameras.

Doc. 11-5 at 49. This grievance was rejected because "transfers of offenders between institutions" is a non-grievable issue. *Id*. at 12-13, 50, 52. Hill appealed the rejection on April 29, 2022, which was denied on May 17, 2022 and received by Hill on May 25, 2022. *Id*. at 50-52. It is undisputed that Hill fully exhausted this grievance. Docs. 68-1 ¶ 79; 69-1 ¶ 79.

Hill submitted grievance 337170 on March 30, 2022:

> On and around 3/23/2022 I Otis L. Hill was placed in G1 building, room 215. Due to my injury from baldwin state prison I am still in pain and having chest pains. At or around 10:50 pm I wanted to notify a officer of

> my chest pains, no officer did security rounds or a wellness check.  A fire was set to get a officer's attention but no officer came.  1 ½ hours passed with fire outside of my door no help came.  Around 11:45 pm officer Segt. Head came in the dorm and did not help.  She said she works 2 buildings and didn't have the time or staff to assist.  Witness, cameras, and Genesis Harper #1293609.  I fear for my life in the hand of GDOC.

Doc. 11-5 at 54.  This grievance was rejected on August 16, 2022 because it raised more than one issue.  *Id*. at 17, 56.  Although Hill did not receive notice of this rejection until after he filed suit, he could have appealed at any time after May 9, 2022, the 40-day deadline for a response.  *Id*. at 56.  It is undisputed that Hill did not appeal.  Docs. 68-1 ¶ 80; 69-1 ¶ 80.

> Hill submitted grievance 338703 on May 9, 2022:

> Ongoing; The Tier program is established to protect staff, offenders, and the public from offenders who commit or lead others to commit violent, disruptive, predatory, or riotous actions, or who otherwise pose a serious threat to the safety and security of the facility.  I informed Dept. Salls that I fear for my life from the Staff and Administration at Macon State Prison, due to a understaffed facility.  I have broken No rules and Im being punished, placed in room G1-215 Tier 1, ongoing.  This is cruel and unhuman.

Doc. 11-5 at 58.  This grievance was rejected because it concerned housing assignments, program assignments, and/or security classifications—non-grievable issues.  *Id*. at 13, 60.  Hill received notice of the rejection on June 14, 2022.  *Id*. at 60.  It is undisputed that Hill did not appeal.  Docs. 68-1 ¶ 81; 69-1 ¶ 81.

Thus, Hill's March 24, 2022 grievance is the only grievance that Hill exhausted before filing this action.  Doc. 11-5 at 49.  This grievance does not address the alleged retaliatory conduct that is the basis of Hill's failure to protect claims.  *Id*.  As for Hill's conditions of confinement claims, the grievance is too broad and too vague to have put MSP on notice of the specific issues Hill wanted addressed and to have allowed MSP

the opportunity to investigate and resolve the issues.[5]  The grievance merely states MSP is short-staffed, resulting in unsafe and overcrowded conditions.  *Id*.  The grievance does not identify or describe the unsafe conditions.  *Id*.  Thus, MSP had no notice of the various conditions alleged in Hill's complaint—rat infestations, rat feces, lack of water, lack of shower access, poor air quality, lack of bedding, and lack of food.  Doc. 1 ¶¶ 95-97, 101-105.

In sum, the undisputed evidence establishes, as Hill concedes, that he failed to exhaust—his only fully exhausted grievance included no facts relevant to his failure to protect claim and was overly broad and insufficient to exhaust his conditions of confinement claim.  Thus, the Court turns to Hill's unavailability defense.

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'"  *Turner*, 541 F.3d at 1084 (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).  Thus, an inmate is excused from the PLRA's exhaustion requirement when the grievance procedure is unavailable.  In *Ross v. Blake*, the Supreme Court "enumerated three circumstances in which administrative remedies [are] unavailable: (1) when the administrative procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) where the administrative scheme is 'so opaque that it becomes... incapable of use... [and] no ordinary prisoner can discern or navigate it'; and (3) when 'prison administrators thwart

---

[5] "[T]he purpose of administrative exhaustion … 'is to put the [prison] on notice of all issues in contention and to allow the [prison] an opportunity to investigate those issues'" as well as "the opportunity to resolve it before being sued."  *Chandler v. Crosby*, 379 F.3d 1287, 1287 (11th Cir. 2004) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985)); *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010); *Brown v. Sikes*, 212 F.3d 1205, 1209-10 (11th Cir. 2000).

inmates from taking advantage of a grievance process through machination,
misrepresentation, or intimidation.'"  *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355
(11th Cir. 2020) (quoting *Ross*, 578 U.S. 632, 643-44 (2016)).

"While the burden is on the defendant to show an available administrative
remedy, once that burden has been met, the burden of going forward shifts to the
plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was
'subjectively' and 'objectively' unavailable to him."  *Id*. at 1356.  The defendants have
carried their burden by pointing to the GDC's two-step administrative process.  Docs.
11-5 ¶ 5, at 16-23; 68-2 at 7; *see Wright v. Ga. Dep't of Corrs.*, 820 F. App'x 841, 845
(11th Cir. 2020) ("[Plaintiff] is correct that the defendants must first prove that a remedy
was available to him before they can prove failure to exhaust the remedy.  But he
confuses the issue of whether a remedy is generally available (i.e., a grievance
procedure exists) with whether a remedy was available to him practically speaking.").

Hill has not carried his burden to show that MSP's grievance procedure was
"subjectively" and "objectively" unavailable.  He devotes a single paragraph to his
unavailability argument:

> Mr. Hill had filed over 10 grievances with the prison in accord with the
> grievance procedure at Macon State Prison.  Macon State Prison
> personnel have purposefully frustrated Mr. Hill's attempts to comply with
> the administrative exhaustion process by ripping up completed grievances
> and refusing to accept completed grievances.  Because of Macon State
> personnel's intentional behaviors, Mr. Hill has been unable to file appeals
> for his grievances related to conditions of confinement, physical abuse,
> and failure-to-protect.  The Macon State Prison administrative exhaustion
> process is therefore unavailable to Mr. Hill because prison personnel have
> failed to comply with processing procedures; moreover, Macon State
> Prison personnel have thwarted Mr. Hill's access through intimidation and
> threats of bodily injury.

Doc. 69-3 at 4 (internal citations omitted).  At best the Court can tell, Hill is arguing a combination of the first and third *Ross* exceptions, i.e., the process was a dead end because officers thwarted his grievance efforts.[6]  *Id.*; Doc. 68-2 at 10; 578 U.S. at 643-44.  Rather than analyzing specific facts that might support this argument, Hill instructs the Court to read Hill's deposition.  Doc. 69-3 at 4.  Reluctantly, the Court accedes to that instruction.

The Court can discern from Hill's testimony the following incidents regarding his efforts to file grievances.  First, Hill testified that after he filed the BSP lawsuit and while still housed at BSP, a counselor took a pen from Hill's hand as he "was proceeding to write injunction on the grievance."  Doc. 68-3 at 145:12-18, 146:10-22.  Whether his attempts to file grievances at BSP were thwarted, however, is irrelevant—Hill's allegation is that *MSP*'s grievance procedure was unavailable.  Docs. 1 ¶ 7; 69-3 at 4.

Next, Hill testified that at some point during his stint at MSP, he attempted to give the Chief Counselor three grievances, but the Chief Counselor "told [Hill] he wasn't going to accept the grievance[s]" and "he would send a counselor down to handle the issue," but "[n]o one ever came."  Doc. 68-3 at 142:19-143:4, 144:22-25, 156:14-23.  Hill admits he does not know whether the Chief Counselor did not tell anyone to help Hill.  *Id.* at 145:1-7.  Hill also testified that he does not know what these three

---

[6] Although not argued in his brief, Hill's complaint and his testimony suggest a possible unavailability argument based on MSP "personnel … purposefully wait[ing] until the 30-day time period has lapsed before processing Mr. Hill's grievances to create a procedural basis to deny him of the grievance process altogether."  Docs. 1 ¶ 7; 68-3 at 157:16-158:13.  He also testified that the grievance process had been "tampered" with because counselors choose to deny some grievances, but accept others.  Doc. 68-3 at 154:24-155:17.  First, the 30-day period Hill refers to is a 40-day period.  Doc. 11-5 at 19.  Second, as noted, if MSP fails to respond to a grievance within 40 days, the inmate can still appeal.  Finally, the Eleventh Circuit has held that a futility argument of this nature is meritless.  *Garcia v. Obasi*, 2022 WL 669611, at *4 (11th Cir. 2022) ("[T]he PLRA requires prisoners to properly complete each step of an available grievance process, even if the process is ultimately futile.").

grievances were about.  *Id*. at 157:4-10.  All this testimony reveals is that, on *one* occasion, the Chief Counselor told Hill he would send someone to collect his grievances and no one came.  *See* Docs. 11-5 ¶¶ 2, 4; 68-3 at 143:10-144:25.  There is no evidence of what efforts Hill made to file his grievances when "someone" did not come to collect them.  This clearly is insufficient to show that the Chief Counselor acted to thwart the filing of Hill's grievances.

Hill claimed that counselors "were throwing away and altering [his] grievances." Doc. 68-3 at 151:14-20, 159:2-9.  But he only testified to one incident he witnessed where "a female counselor," whose name Hill does not know, ripped up a grievance he wrote in the summer of 2022 about an unnamed officer, "saying that [Hill] couldn't turn that in."  *Id*. at 139:20-25, 140:4-9, 141:5-19, 151:22-25.  Hill also only testified to one altered grievance, but that grievance was submitted after this action was filed.  *Id*. at 159:7-161:10, 169:1-3 (incident underlying grievance occurred on or around September 9, 2022); Doc. 31-6 at 2 (grievance submitted September 13, 2022).  And even if Hill's grievances prior to this action were altered, that suggests Hill was still able to file grievances.  The remainder of Hill's testimony about discarded or altered grievances is entirely conclusory.  He does not know when these incidents occurred or who was involved.  Doc. 68-3 at 151:14-20, 155:2-7, 21-25, 156:14-25, 165:3-5, 181:5-9.

Hill also testified that he filed grievances about the fire extinguisher incident, rat feces, the "hit" on his life, and glass in his food, none of which were processed.  *Id*. at 174:1-178:2, 192:21-193:2, 194:1-11.  But Hill did not file the grievance about the hit until after this action was filed.  *Id*. at 192:21-23, 193:10-15, 25-194:17.  And as for the grievances about the rat feces, glass, and fire extinguisher, Hill provided no further

details about when he tried to submit these grievances, what these grievances said, how they were prevented from being submitted, or any other information that would support his argument that MSP employees were disrupting his attempts to file grievances.

Finally, Hill claims that Knight, Williams, and another officer intimidated him and threatened to inflict bodily injury because of his grievances. *Id*. at 169:21-25. But the only evidence of intimidation and threats is Hill's testimony that at some point after September 9, 2022, he asked Knight "why did they alter" grievance number 343507 and Knight "called [him] a rat and slammed [his] flap down on [the] grievance."[7] *Id*. at 170:18-23. The Eleventh Circuit, in *Turner*, held:

> [A] prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

541 F.3d at 1085. Hill provides no argument that he has met these conditions. *See generally* Doc. 69-3. Nor could he. First, Knight's "threat" did not deter Hill from filing a grievance. Grievance 343507, although allegedly altered, was submitted—Hill received the warden's response, appealed that response, and subsequently filed three more grievances at MSP. Docs. 31-6 at 2; 68-3 at 161:3, 12-14, 162:24-163:2, 168:2-5. Second, Knight's "threat" was made after Hill filed this action and, obviously, could not

---

[7] Knight "do[es] not recall being involved in any grievances filed by" Hill. Doc. 68-6 ¶ 31.

have deterred him from grieving the conduct alleged in the complaint. Docs. 1; 31-6 at 2; 68-3 at 169:1-3.

In sum, Hill's testimony provides no support for his conclusory argument that the grievance process was unavailable. And Hill's argument is undercut by the very fact that while at MSP and prior to filing this action, he filed three grievances and received responses for each of them. Doc. 31-6 at 2. On these facts, the Court cannot conclude that MSP's grievance process was unavailable. *Badger v. Parsons*, 2009 WL 2634073, at *4 n.5 (S.D. Ga. Aug. 26, 2009) ("Plaintiff cannot show that administrative remedies were unavailable simply by making a blanket allegation without any supporting evidence. In this regard, it is not improper for the Court to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were not available."); *Kozuh v. Nichols*, 185 F. App'x 874, 878 (11th Cir. 2006) (holding that the district court did not err in finding that the plaintiff failed to prove unavailability where there was no evidence beyond his own arguments); *Rich*, 530 F.3d at 1373-74, 1377-78 (holding that the district court did not err when it acted as the factfinder in resolving a failure to exhaust defense and properly weighed the credibility of the plaintiff's allegations regarding availability); *Turner*, 541 F.3d at 1086 (remanding to the district court to make factual determinations as to whether the grievance procedure was available); *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) ("The evidence presented cannot consist of conclusory allegations or legal conclusions.").

Because Hill failed to properly exhaust available administrative remedies prior to filing suit, the defendants' motion for summary judgment (Doc. 68) is **GRANTED**.

**B. The Defendants are Entitled to Qualified Immunity**[8]

Even if Hill had properly exhausted his administrative remedies, the defendants are entitled to qualified immunity.

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic … the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). It is undisputed in this case that the defendants were acting within their authority. *See Johnson v. Fee*, 838 F. App'x 394, 398 (11th Cir. 2020) (finding prison officers were acting within their authority considering the "general nature" of their actions) (citing *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017)). Therefore, the defendants are entitled to raise the shield of qualified immunity.

---

[8] Hill's complaint includes many allegations not mentioned in his brief and there is no evidence supporting these allegations in the record. *See, e.g.*, Doc. 1 ¶¶ 17, 60-61 (placement in solitary confinement), ¶¶ 26-27, 33-34 (understaffing), ¶¶ 33-36, 90 (prevalence of knives). The Court deems abandoned any claim based on these allegations. *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326; *Jones v. Bank of Am.*, 564 F. App'x at 434. The Court further notes that qualified immunity is not mentioned once in Hill's brief. *See generally* Doc. 69-3.

To overcome a qualified immunity defense, Hill must establish that (1) the facts, viewed in his favor, establish a constitutional violation as to each defendant; and (2) the unconstitutionality of the defendants' conduct was clearly established at the time of the alleged violation.  *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).  This two-step analysis may be done in whatever order is deemed most appropriate for the case. *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

*1. Failure to protect*

As a preliminary matter, the Court notes that count one of Hill's complaint is titled: "Eighth Amendment Violation Failure to Protect and Abuse of Force."  Doc. 1 at 23.  As far as the Court knows, "abuse of force" in the § 1983 context is only mentioned in Fourteenth Amendment substantive due process school corporal punishment claims—claims clearly irrelevant here.  *See, e.g., Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1076 (11th Cir. 2000); *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 598-99 (11th Cir. 2010); *Harris by and through Davis v. Autry*, 2022 WL 392169, at *6-7 (11th Cir. 2022).  Maybe "abuse of force" is a reference to the GDC term "use of force."  GDC SOP 209.04, https://gdc.georgia.gov/organization/about-gdc/agency-activity/policies-and-procedures/facilities-division-policies/209 (Feb. 18, 2021).  Clearly Hill did not mean to plead an excessive force claim because the term "excessive force" is not in his complaint, brief, or testimony.  *See generally* Docs. 1; 68-3; 69-3.

All the Court knows is that the facts Hill alleges in count one, if they suggest anything, hint at a First Amendment retaliation claim based on the defendants' alleged conduct in response to the BSP lawsuit.  Docs. 1 ¶¶ 15, 18-19, 83, 87; 68-3 at 39:23-

40:10 ("Q: Is it your position that these things that you allege happened at Macon State by Smith, Knight, and Williams, these things are all done in efforts to get you to dismiss the lawsuit at Baldwin State about Martin? … A: To my knowledge, yes."), 40:17-22 ("Q: But it is your position that all of them; Martin, Williams, Knight, and Smith engage in certain behaviors to kind of threaten, intimidate, encourage, or force you to dismiss the Baldwin lawsuit against Martin? A: To my belief, yes."), 201:2-206:11; *see Williams v. Radford*, 64 F.4th 1185, 1192 (11th Cir. 2023) (quoting *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) ("To establish a retaliation claim, a prisoner must demonstrate 'that the prison official's actions were the result of his having filed a [lawsuit] concerning the conditions of his imprisonment.'")); *Malloy v. Peters*, 753 F. App'x 737, 739 (11th Cir. 2018); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).  Notably, the introduction of Hill's complaint, in relevant part, states:

> In May 2022, Mr. Hill was transferred from Baldwin State Prison to Macon State Prison.  To his dismay, Mr. Hill has been confronted with a series of life-threatening experiences *relating to the allegations in his Baldwin State Prison Complaint*.  Specifically, Deputy Warden Martin has threatened to beat Mr. Hill to death *unless Mr. Hill dismisses the pending lawsuit.  Since making that threat*, Deputy Warden Martin has directly and indirectly aiding in the physical assaults of Mr. Hill by: releasing incarcerated individuals from their cells to physically beat Mr. Hill, by aiding in the insertion of glass particles into Mr. Hill's food trays, by aiding in the spraying of Mr. Hill's face with fire extinguisher gas, and continuing *to intimidate and threaten Mr. Hill to drop his lawsuit*.  Knight, Williams, and Smith have engaged in similar actions including physical beatings, starvation, lack of access to water, lack of access to showers, and others.

Doc. 1 at 3 (emphasis added).  But Hill did not allege a First Amendment claim.  Thus, the Court interprets count one as an Eighth Amendment failure to protect claim—the claim pled and argued.

The Eighth Amendment's "prohibition on cruel and unusual punishments requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  To establish an Eighth Amendment failure to protect claim against the defendants, Hill must provide evidence of: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation.[9]  *Id*. at 1357-58; *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard."  *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal citation omitted).  To prevail, a plaintiff must show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."  *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane,* 835 F.3d at 1307).  Courts "ask whether a reasonable jury could find that the [plaintiff] encountered 'a strong likelihood, rather than a mere possibility,' of grievous injury."  *Nelson*, 89 F.4th at 1296 (quoting *Brown v. Hughes*, 894 F.2d 1533,1537 (11th Cir. 1990)).  The plaintiff can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison[10] or a particular area of the prison, or by an individualized risk based on a "specific threat" to the plaintiff.  *Marbury*,

---

[9] This causal connection requires proof that the defendant "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded."  *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024) (quoting *Rodriguez v. Sec'y for Dep't of Corrs*., 508 F.3d 611, 622 (11th Cir. 2007)).

[10] Hill does not argue a general threat.  *See generally* Docs. 1; 69-3.

936 F.3d at 1233, 1235; *see also Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005).

To establish the second element—deliberate indifference—a plaintiff: (1) "must prove that the [defendant] was subjectively aware that the inmate was at risk of serious harm"; (2) "must show that the [defendant] disregarded that risk"; and (3) "must prove that the defendant acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839). Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez*, 508 F.3d at 617 (citing *Farmer*, 511 U.S. at 837). "Whether a prison official had the requisite knowledge … is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. The trier of fact may, therefore, "conclude that the [defendant] knew of a substantial risk from the very fact that the risk was obvious." *Id*. The determination of whether a risk has been disregarded is objective: "the [defendant] must have responded to the known risk in an unreasonable manner." *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1255. In other words, "a defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found liable' under the Eighth Amendment." *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 837) (internal citation omitted). To establish that "the defendant acted with 'subjective recklessness as used in the criminal law'" requires proof "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm."[11] *Wade*, 106

---

[11] Hill does not, and likely could not, argue any of the defendants can be held responsible under a supervisory liability theory. *See generally* Docs. 1; 69-3.

F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839).  Hill can establish neither element

against any of the defendants.

        a. Martin

    Hill argues that Martin, the *BSP* Warden, failed to protect him because Martin

assaulted him, "directly and repeatedly verbally threatened him for 'being a rat,'" and

"put 'a hit' out on his life," leading to an assault on Hill by other inmates.  Doc. 69-3 at 5.

First, there is no evidence that Martin assaulted Hill.[12]  Second, verbal threats are not

enough to establish a substantial risk of serious harm under an Eighth Amendment

failure to protect claim.  *Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989)

(internal quotes and citation omitted) ("[A] [plaintiff] must allege more than that he has

been subjected to verbal taunts[,] however distressing in order to make a claim that [the

defendants] have violated their duty of protection or deprived the [plaintiff] of his

constitutional rights."); *Coleman v. McGhee*, 2022 WL 217578, at *2 (11th Cir. 2022).[13]

    That leaves the alleged assault on Hill by fellow inmates at MSP supposedly

done in furtherance of Martin's "hit."  According to Hill's complaint, Knight, Williams, and

Smith knew about Martin's "hit" on Hill's life and, with that knowledge, Smith and

Williams conspired to remove Hill from solitary confinement to have other inmates and

officers "physically hit … Hill all over his face and body until he was incapacitated and

---

[12] Hill suggested Martin "roughed" him "up a bit" before the filing of the BSP lawsuit.  Doc. 68-3 at 58:24-59:10.  That conduct and that time period was not alleged in the complaint and is not part of this action. *See generally* Doc. 1.

[13] For this reason, any claim against Smith, Knight, or Williams based on verbal threats alone also fails.

unable to breathe."[14]  Doc. 1 ¶ 60.  However, Hill testified that he did not know if Smith

and Williams knew Martin, nor did either of them direct inmates to assault Hill.  Doc. 68-

3 at 42:8-9, 14-15, 61:17-20.  Moreover, the only evidence connecting Martin to an

inmate assault at MSP is Hill's testimony that inmates "showed [Hill] a text message

saying that there was a hit on [his] head by Mr. Martin" and that another inmate, upon

Hill's arrival at MSP, "passed [him] a note saying to watch [his] back, that Mr. Martin had

actually put a hit on [his] head there."  Doc. 68-3 at 60:7-61:10.  But (1) Hill's accounts

of the note and text are hearsay,[15] and (2) the note and text are subject to the best

evidence rule.  "The best evidence rule, codified as Federal Rule of Evidence 1002,

requires the production of originals to prove the content of any writing, recording[,] or

photograph."  *United States v. Guevara*, 894 F.3d 1301, 1309 (11th Cir. 2018).

Because Hill is relying on the text and note to establish that Martin directed the assault,

and because Hill has not argued that some exception applies, the Federal Rules require

the production of the original note and text.  *See* Fed. R. Civ. P. 1004; *United States v.*

*Flanders*, 752 F.3d 1317, 1336 (11th Cir. 2014).  Hill did not produce either.  Although

"evidence does not have to be authenticated or otherwise presented in an admissible

form to be considered at the summary judgment stage … 'as long as the evidence could

ultimately be presented in an admissible form,'" Hill has not shown how the text or note

---

[14] Hill testified that at MSP, "four inmates pushed [him] into [a] room" and he "was beat, [he] was tied up, and [he] was stabbed."  Doc. 68-3 at 60:21-61:4.  But the only stabbing of Hill alleged in his complaint is one that occurred at BSP.  Doc. 1 ¶¶ 8-9.  And Hill does not mention a stabbing in his brief.  *See generally* Doc. 69-3.  He merely states "that he was physically assaulted by a group of four incarcerated people at the direction of Defendants Martin, Smith, Knight, and Williams."  *Id.* at 5.  Simply put, the MSP stabbing is a mystery.

[15] The defendants raised a hearsay objection regarding the text.  Doc. 68-2 at 13.  Hill failed to respond to this argument.  *See generally* Doc. 69-3.  Because it is Hill's burden to establish that the text came within a hearsay exception or is non-hearsay, he has abandoned any argument that the text is admissible. *United States v. Kennard*, 472 F.3d 851, 855-56 (11th Cir. 2006).

could eventually be presented in an admissible form.  Nothing in the record shows if they still exist, who wrote them, or who showed them to Hill.

Finally, Hill has provided no evidence connecting Martin to the other defendants. Rather, the evidence shows that Martin—then BSP Warden—had neither authority over nor a connection to MSP or the other defendants.  Docs. 68-4 ¶¶ 2, 12-14, 16; 68-5 ¶¶ 9-10; 68-6 ¶¶ 11-12; 68-7 ¶¶ 11-12.  Even Hill conceded that Martin had no "authority over the operations at" MSP and he does not know if any of the defendants knew Martin.  Doc. 68-3 at 29:16-19, 42:1-16.  Thus, because Hill has failed to establish a connection between Martin and MSP, Hill has failed to show how Martin could have known of a risk or have failed to protect Hill from any risk.

In sum, Hill has provided no admissible evidence of Martin's failure to protect Hill. The undisputed fact is Martin worked at BSP and had no authority over the operations of MSP and no duty to protect MSP inmates.  *LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) ("[T]o demonstrate an official's deliberate indifference, a plaintiff must prove that the official possessed … the means to cure [the unconstitutional] condition.");  *Williams v. Bennett*, 689 F.2d 1370, 1375, 1389 (11th Cir. 1982) ("Evidence that an individual defendant had neither the authority nor the resources to prevent the deprivation is material … To prove actionable conduct or callous indifference, [the plaintiff] must demonstrate that a particular defendant had the capability (authority and means) to provide adequate security and did not do so.");  *Rodriguez* 508 F.3d at 622. How Martin could have protected Hill from Martin is unclear and illogical.  Accordingly, there is no evidence that Martin "failed to protect" Hill in violation of the Eighth Amendment.

b. Smith

Hill argues in his brief that there is an issue of fact as to whether Smith violated his Eighth Amendment rights because Smith assaulted him and directed inmates to assault him.  Doc. 69-3 at 5.  But Hill testified that Smith never directed other inmates to assault him and testified that Smith himself never assaulted him.[16]  Doc. 68-3 at 58:12-19, 61:12-20.  Accordingly, there is no evidence that Smith "failed to protect" Hill in violation of the Eighth Amendment.

c. Knight

Hill argues in his brief that there is an issue of fact as to his failure to protect claim against Knight because Knight was involved in the inmate assault and because Knight "hit [Hill] in the head and chest with a Noxzema can."  Doc. 69-3 at 5.  But Hill testified that Knight was not involved in the alleged inmate assault.  Doc. 68-3 at 61:12-20.  And Hill also testified that the Noxzema can incident happened *after* this lawsuit was filed and is thus not before the Court.  *Id.* at 57:22-58:3.  In any event, that incident, had it been sufficiently serious and properly developed (it was neither serious nor developed), would support an excessive force claim, not the failure to protect claim Hill

---

[16] Hill alleged in his complaint and testified that Smith directed another officer to twist Hill's arm while Hill was escorted to medical after the fire extinguisher incident.  Docs. 1 ¶¶ 64-65; 68-3 at 89:7-90:17.  Hill does not argue that Smith's alleged instruction to an officer to "twist" Hill's arm supports Hill's failure to protect claim against Smith.  *See generally*, Doc. 69-3.  Although the complaint suggests Hill's arm was broken or fractured, that was not true.  Doc. 1 ¶ 64 ("Upon the direction from Warden Smith, Mr. Hill was punched in his back and arm repeatedly.  Mr. Hill's arm was twisted to the point of breaking following Warden Smith's orders to hurt Mr. Hill."), ¶ 67 ("At the time when Mr. Hill was having his arm twisted to the point of near fracturing …").  When asked at his deposition whether he went to medical after he breathed in fire extinguisher spray, Hill stated he did, but only for his cough; he did not state that medical personnel determined that his arm was broken or fractured.  Doc. 68-3 at 87:17-88:19.  Finally, a video of officers walking Hill and his cellmate to medical after the fire extinguisher incident was previously filed, but neither party relies on it.  Doc. 34-7.

pleads.  Accordingly, there is no evidence that Knight "failed to protect" Hill in violation of the Eighth Amendment.

                d. Williams

Finally, Hill contends there is an issue of fact as to his failure to protect claim against Williams because Williams was involved in the inmate assault and Williams assaulted him.  Doc. 69-3 at 5.  But, once again, Hill testified that Williams was not involved in the inmate assault and that Williams never assaulted him.  Doc. 68-3 at 58:20-23, 61:12-20.  Accordingly, there is no evidence that Williams "failed to protect" Hill in violation of the Eighth Amendment.

*2. Conditions of Confinement*

Hill alleges his conditions of confinement claim is based on rats, rat feces, a lack of water, lack of shower access, poor air quality, no bedding, and inedible food.  Doc. 1 ¶¶ 95-107.

The conditions under which an inmate is confined are subject to constitutional scrutiny.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  Only actions that deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations under the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Prison officials must "provide humane conditions of confinement [and] must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measure to guarantee the safety of the inmates.'"  *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  "'No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving

standards of decency that mark the progress of a maturing society.'" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Rhodes*, 452 U.S. at 346). Because "'restrictive and even harsh'" prison conditions "'are part of the penalty that criminal offenders pay for their offenses against society,'" "prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'" *Id*. (quoting *Rhodes*, 452 U.S. at 347).

To establish an Eighth Amendment conditions of confinement claim, a plaintiff must show "two components: one objective and the other subjective." *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020). Under the objective component, a plaintiff must show that the conditions were "'extreme'" and "'pose[d] an unreasonable risk of serious damage to his future health' or safety." *Chandler*, 379 F.3d at 1289 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) and *Helling*, 509 U.S. at 33). This requires a showing that "an objectively substantial risk of serious harm … exists." *Marsh v. Butler Cnty., Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Twombly*, 550 U.S. at 561-63. Under the subjective component, a plaintiff must show that a defendant acted with deliberate indifference, as noted above.[17] *Swain*, 958 F.3d at 1089 (quoting *Farmer*, 511 U.S. at 837).

The defendants argue Hill's conditions of confinement claim fails because none of the conditions Hill testified to were extreme enough to constitute an Eighth Amendment violation. The Court agrees.

---

[17] The Court emphasizes two points: Martin never worked at MSP and thus cannot be held responsible for the living conditions at MSP and there are no arguments that Smith, as the MSP Warden, should be held responsible under a supervisory liability theory.

Hill testified that twice he found glass and rat feces in his food.  Doc. 68-3 at 73:3-74:5, 117:5-11, 119:1-14.  But Hill did not consume the glass or feces, and Hill does not know how the glass and feces got in the food.  *Id*. at 73:3-74:5, 75:18-25, 117:12-118:11.  Hill also testified that a rat was placed on his food one time, but he does not know how it got there.  *Id*. at 115:20-116:19.  And when asked about spoiled food and "starvation," Hill provided no details—it is unclear if he was served spoiled food or whether he was starved and, if he was, there is no evidence of when or how often such events occurred, or any other details of the supposed events.  *Id*. at 98:4-99:3, 128:4-22; *see Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.").

Hill's air quality allegation is apparently based on the fire extinguisher incident and the presence of rats.  Doc. 1 ¶¶ 97, 102, 105.  But one spray cannot support a conditions of confinement claim.  And Hill did not testify how often he encountered rat feces or rats and provided no testimony, expert or otherwise, explaining how rats, their feces, or fire extinguisher spray affected his ability to breathe.  *Id*. at 119:6-7.

Similarly, there is scant evidence supporting Hill's allegation he lacked bedding and no evidence of the extent or duration of this "condition."  Hill testified that he was not provided bedding as an intimidation tactic, but he did not say who did not provide the bedding or how often bedding was denied.[18]  *Id*. at 97:6-10, 15.  The same is true for Hill's shower access allegation.  Hill testified that Knight, Smith, and Williams "walk[ed] by [his] cell numerous of days and [him] actually verbal[ly] telling them and as

---

[18] Because the deprivation of bedding was an alleged intimidation tactic, it seems likely it was a short term "condition."

they're walking by that [he hasn't] showered" and that "during … the first six weeks at" MSP, "showers were being ran, and [Williams] skipped over [his] dorm." *Id*. at 104:7-14. In the absence of evidence of the extent and frequency of Hill's alleged inability to shower, there is no issue of fact suggesting that Hill's showerlessness rose to the level of an unconstitutional condition of confinement.  Finally, Hill provided no details regarding the water turn-off.  *Id*. at 102:13-103:1.

In sum, there is no evidence that the conditions Hill experienced at MSP, standing alone or in their totality, rose to the level of a "wanton and unnecessary infliction of pain" in violation of the Eighth Amendment.  *Chandler*, 379 F.3d at 1289; *Rhodes*, 452 U.S. at 349 ("[T]he Constitution does not mandate comfortable prisons."); *see Wilson v. Blankenship*, 163 F.3d 1284, 1292 (11th Cir. 1998); *Hamm*, 774 F.2d at 1575; *Brown v. Crawford*, 906 F.2d 667, 672 n.3 (11th Cir. 1990).

*3. No violation of a "clearly established" right*

Because the defendants did not violate Hill's constitutional rights, it is not necessary for the Court to consider the "clearly established" prong of the qualified immunity analysis.  *Melton v. Abston*, 841 F.3d 1207, 1223, 1225 (11th Cir. 2016) ("Because [the defendant] did not violate [the plaintiff]'s constitutional rights, we need not reach the second prong of the qualified immunity inquiry.").  But it is helpful.  Hill, as noted, does not address qualified immunity.  Thus, Hill does not point to any Eleventh Circuit, Georgia Supreme Court, or United States Supreme Court case to support his arguments that the defendants violated clearly established law.[19]

---

[19] A right becomes "clearly established" in three ways.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  First, Hill can show that a materially similar case has already been decided, consisting of binding precedent by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court.  *Id*.  Second, Hill can show that a broader clearly established principle should control the novel

**IV. CONCLUSION**

Accordingly, because Hill failed to properly exhaust his administrative remedies and because the defendants are nonetheless entitled to qualified immunity, the defendants' motion for summary judgment (Doc. 68) is **GRANTED**.

**SO ORDERED**, this 20th day of September, 2024.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

facts of the particular case—that is, the unconstitutionality of the instant conduct must be apparent by looking to the guiding principles of the previous case, irrespective of the underlying factual situation. *Id*. Third, Hill can show that the conduct is so egregiously unconstitutional that prior case law is unnecessary. *Id*.